## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | |
|---|---|
| **MELVIN ADDISON ET AL** | **CASE NO. 2:24-CV-00947** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **RICHARD WILLIAM HUYE III ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

### MEMORANDUM RULING

Before the court is a Motion to Dismiss [doc. 20] filed by defendants EAJF ESQ Fund LP and Equal Access Justice Fund LP under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs oppose the motion. Doc. 24.

### I.
### BACKGROUND

This suit arises from the efforts of McClenny, Moseley & Associates, PLLC ("MMA"), a Texas law firm, to solicit clients in Louisiana following the 2020 and 2021 hurricane seasons. MMA, funded by movants, allegedly entered into a series of contracts with defendant Tort Network LLC, d/b/a Velawcity, for client solicitation whereby MMA would pay Velawcity $3,000–$3,500 for each client "delivered" to MMA.[1] Doc. 1, att. 2, p. 129, ¶¶ 4–5.

Plaintiffs are Melvin and Adriana Addison, homeowners in Southwest Louisiana, and their mortgage company. MMA filed a lawsuit on Melvin Addison's behalf, as well as

---

[1] Plaintiffs allege that the rate was initially $3,000 and subsequently increased to $3,500/client. *Id.*

hundreds of others, in the week leading up to the two-year prescriptive period for Hurricane Laura claims. *See Addison v. Allstate Vehicle & Prop. Ins. Co.* ("Addison I"), No. 2:22-cv-3431 (W.D. La.). A local law firm also filed suit on Melvin Addison's behalf the following day, raising claims against the same insurer based on Hurricane Laura damage to the same property. *See Addison v. Allstate Vehicle & Prop. Ins. Co.* ("Addison II"), No. 2:22-cv-3547 (W.D. La.). *Addison I* was stayed by this court, along with MMA's other hurricane cases, due to concerns about irregular filings and the proper representation of the parties. *Addison I*, No. 2:22-cv-3431, at docs. 4 & 5. *Addison II* was not stayed and was dismissed on May 2, 2023, after the parties reached a settlement. *Addison II*, No. 2:22-cv-3547, at doc. 18. *Addison I* was then dismissed for failure to prosecute on October 12, 2023. *Addison I*, No. 2:22-cv-3431, at doc. 23.

Under Louisiana law, it is a felony for an attorney to pay anything of value to obtain representation of a client. La. R.S. 37:219(A), (C). Under the state's money laundering statute, it is also unlawful to knowingly (a) invest anything of value known to be for the purpose of committing or furthering commission of a felony or (b) receive or acquire proceeds derived from any felony. La. R.S. 14:230(B)(4)–(6). Plaintiffs Melvin and Adriana Addison maintain that they became clients of MMA through the firm's illegal purchase of clients from Velawcity, financed by movants. Doc. 1, att. 2, pp. 128–35. Accordingly, they and their mortgage company filed a proposed class action in state court under the Louisiana Racketeering Act ("LRA"), La. R.S. 15:1351 *et seq.*

After two amendments, the only defendants to that suit are Velawcity and movants. Movants removed the matter to this court under the Class Action Fairness Act ("CAFA"),

28 U.S.C. § 1332(d). Doc. 1. They now move to dismiss plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6), asserting that plaintiffs (1) lack standing to assert a claim under the LRA and (2) fail to state such a claim. Doc. 20. Plaintiffs oppose the motion, arguing that movants' assertion of no standing means that the matter should be remanded to the state court. Doc. 24.

## II.
## LAW & APPLICATION

### A. Legal Standards

Although this motion was filed under Rule 12(b)(6), movants' concerns as to standing implicate the court's subject matter jurisdiction and must be considered first under Rule 12(b)(1). *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A motion under Rule 12(b)(1) attacks the court's jurisdiction to hear and decide the case. FED. R. CIV. P. 12(b)(1). Additionally, federal courts have a "constitutional duty . . . to decline subject matter jurisdiction where it does not exist—and that is so whether the parties challenge Article III standing or not." *Abraugh v. Altimus*, 26 F.4th 298, 304 (5th Cir. 2022). Lack of subject matter jurisdiction may be found based on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming*, 281 F.3d at 161. No party has requested an evidentiary hearing and the court finds that they have had adequate opportunity to present their arguments based on the record in this case and the Addisons' other suits.

B. Application

A claim must be dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The doctrine of standing is 'an essential and unchanging part of the case-or-controversy requirement of Article III." *Tenth St. Residential Ass'n v. City of Dallas, Tex.*, 968 F.2d 492, 499 (5th Cir. 2020) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). To establish standing under Article III, a claimant must meet the three elements laid out in *Lujan*:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of— the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*NAACP v. City of Kyle, Tex.*, 626 F.3d 233, 237 (5th Cir. 2010) (quoting *Lujan*, 504 U.S. 560–61).

An "injury in fact" means "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Wendt v. 24 Hour Fitness USA, Inc.*, 821 F.3d 547, 550 (5th Cir. 2016) (internal quotations omitted). Additionally, under prudential standing rules, a litigant generally may not assert the legal rights of another person. *Singh v. RadioShack Corp.*, 882 F.3d 137, 151 (5th Cir. 2018) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014)). When a case is at the pleading stage, a plaintiff must "clearly . . . allege facts

demonstrating each element" of the standing requirement. *Landrum v. Blackbird Enterps., LLC*, 214 F.Supp.3d 566, 569 (S.D. Tex. 2016) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

As to their alleged injury, plaintiffs state only:

> The Addison's [*sic*] suit, like all other MMA lawsuits in both Louisiana State and Federal Courts, was subject to a stay (and resulting delays) as a result of the stay order issued by the U.S. District for the Western District of Louisiana. All three Louisiana Federal District Courts as well as the Louisiana Supreme Court issued stays of every suit and/or claim initiated by MMA. As a result, each of the policyholders (such as the Addison Plaintiffs) and the mortgage holders (such as Accord Services) was, at a minimum, injured by the issuance of the stay and resulting delay, giving rise to the claims asserted herein by the Addison and Accord Services Plaintiffs as well as the Plaintiff Class Members as defined and outlined herein.

Doc. 1, att. 2, p. 132, ¶ 15. Under the federal RICO statute, a plaintiff must show a "concrete financial loss" to have standing.[2] *HCB Fin. Corp. v. McPherson*, 8 F.4th 335, 344 (5th Cir. 2021). A concrete financial loss requires "an actual loss of [plaintiff's] money, and not mere injury to a valuable intangible property interest." *Id.* Plaintiffs have alleged no such loss. But movants maintain that this is an issue of statutory, rather than constitutional, standing. *See Cox, Cox, Filo, Camel & Wilson, LLC v. Sasol N. Am. Inc.*, 544 F. App'x 455, 457 (5th Cir. 2013) (court's dismissal of racketeering case for lack of concrete injury "more closely tracked an inquiry into whether plaintiff state a claim under Louisiana's Racketeering Act—a Rule 12(b)(6) question."). In return, plaintiffs argue that the question of whether their injury is "concrete" must fall under Article III. To this end they point to

---

[2] Courts have looked to case law construing this statute to analyze LRA claims, due to the parallel nature of the acts and the dearth of case law on the latter. *Cox, Cox, Filo, Camel & Wilson, LLC v. Sasol N. Am. Inc.*, 2013 WL 4516007, at *3 (W.D. La. Aug. 22, 2013); *see also State v. Touchet*, 759 So.2d 194, 197 (La. Ct. App. 3d Cir. 2000).

the Fifth Circuit's recent dismissal of federal RICO claims for lack of subject matter jurisdiction where plaintiffs failed to show either physical injury or a plausible theory of economic harm. *See Earl v. Boeing Co.*, 53 F.4th 897, 902–03 (5th Cir. 2022).

The latter case is persuasive and binding on this court. The question of whether "delay" amounts to a sufficient injury implicates not just statutory standing under the LRA but also plaintiffs' ability to establish an injury in fact under Article III. Plaintiffs fail to allege any other harms resulting from this delay, such as mental anguish or increased cost of construction. Additionally, even if delay amounted to a plausible theory of harm, the record contradicts plaintiffs' allegations. The Addison plaintiffs had a separate lawsuit filed by a local firm, which was never stayed and through which they achieved a settlement less than one year after filing. Accordingly, it appears plaintiffs have no claim of injury qualifying for Article III standing. This court thus lacks subject matter jurisdiction over their suit.

When a federal court determines that it lacks subject matter jurisdiction over a removed suit, the proper remedy is remand rather than dismissal without prejudice. *Lutostanski v. Brown*, 88 F.4th 582, 587 (5th Cir. 2023). The removal statute mandates as much. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case **shall** be remanded.") (emphasis added). If a defendant removes a case to this court and simultaneously demonstrates the plaintiff's lack of Article III standing, it negates rather than establishes the court's jurisdiction and "confirm[s] the necessity of remand, rather than dismissal." *Buras v. Hill*,

2023 WL 4234393, at *1 (E.D. Tex. June 28, 2023). Accordingly, the suit will be remanded to state court.

### III.
#### CONCLUSION

For the reasons stated above, the Motion to Dismiss [doc 20] will be **DENIED** and all claims in this matter will instead be **REMANDED** to the Fourteenth Judicial District Court, Calcasieu Parish, Louisiana.

**THUS DONE AND SIGNED** in Chambers on the 26th day of August, 2024.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**